# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK KNUTSON,<br><br>  Plaintiff,<br><br>v.<br><br>BLUE LIGHT SECURITY, INC.,<br><br>  Defendant. | Case No.: 17cv134-LAB (JMA)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS OR STAY** |

Plaintiff Erik Knutson filed this putative class action, bringing claims under the Telephone Consumer Protection Act (TCPA). He alleged that Defendant used an auto-dialer to place an unsolicited call to his cell phone, for which he was charged.

The parties filed two joint motions for an extension of time for Defendant Blue Light Security, Inc. to answer. Before the Court ruled on those, however, Blue Light filed a motion to dismiss the complaint or stay the case. The joint motions (Docket nos. 5 and 7) are **GRANTED** and Blue Light's motion to stay or dismiss is accepted as filed. *See* Fed. R. Civ. P. 12(a)(4)(A) (providing that if a motion is served under the date for filing a responsive pleading is extended to 14 days after notice of denial of the motion).

/ / /

1

Blue Light has moved to dismiss for lack of jurisdiction and for failure to state a claim, or in the alternative, to stay pending a decision by the D.C. Circuit that could clarify the law. Its motion is supported by a request for judicial notice of court records.

**Request for Judicial Notice**

Knutson opposes notice, arguing that the documents cannot be considered, because doing so would amount to making findings of fact that have no place in ruling on a Rule 12(b)(6) motion. But adjudicative facts, including court records, can be judicially noticed. *See Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111 at 1116 (C.D. Cal. 2010) (citing authority). And matters properly subject to judicial notice can be considered when ruling on a 12(b)(6) motion to dismiss. *Swartz v. KMPG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court may treat such documents as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The one exhibit that cannot properly be judicially noticed is Exhibit I, which is an online ad for Knutson's real estate business.

The request is **GRANTED** as to the judicial records, but **DENIED** as to Exhibit I.

**Legal Standards for Rule 12(b)(6) Motions**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to

relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain enough factual allegations that, accepted as true, would state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept conclusions of law as true, however, even if cast as factual allegations. *Id.* at 678. A claim may be dismissed under Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

**Standing**

The motion to dismiss argues Knutson lacks either Article III or prudential standing. The Court is required to address jurisdictional issues such as standing, before proceeding to the merits. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 93–94 (1998). Because Article III standing is jurisdictional, the Court must raise and address issues that call its jurisdiction into question, even if not briefed by the parties. *See Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1269–70 (2015); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1 (9th Cir. 2017).

At a minimum, constitutional standing consists of three elements: 1) an injury in fact that is 2) fairly traceable to the defendant's challenged conduct, and that is 3) likely to be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court recently clarified the injury-in-fact requirement, explaining that a "bare procedural violation, divorced from any concrete harm" did not amount to a cognizable injury. *Id.* at 1549. In *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017), the Ninth Circuit applied *Spokeo* to a TCPA claim, and held that — in that case, at least — the invasion of privacy, intrusion, and nuisance of pre-recorded and auto-dialed calls made to unconsenting consumers can amount to a cognizable injury. Any dispute about whether a plaintiff

consented to receive calls goes to the merits, however, rather than the standing. *Id.* at 1043–48. That being said, receiving unsolicited calls or texts does not necessarily result in economic loss. *See id.* at 1049.

Some courts in this circuit have determined that a TCPA violation, on its own, does not necessarily result in a cognizable injury. *See Nghiem v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 810 (C.D. Cal. 2016) (surveying cases). Some have held that the nuisance or irritation of a single call is a de minimis injury that does not give rise to standing, but this does not appear to be good law after *Van Patten See Romero v. Dept. Stores Nat'l* Bank, ___ Fed. Appx. ___, 2018 WL 1079728 at *1 (9th Cir. Feb. 28, 2018) (reversing district court's holding that de minimis irritation would not support Article III standing). Other courts, after *Van Patten*, have held that de minimis economic damages such as diminution in battery life, use of device storage, and diminution of a phone's usefulness as the result of a single download, text, or call do not amount to an injury in fact. *See Holt v. Facebook*, 240 F. Supp.3d 1021, 1035–36 (N.D. Cal., 2017) (surveying cases).

**Discussion**

The complaint alleges that Blue Light placed an auto-dialed call to Knutson, and that shortly after he answered, a live operator[1] spoke to him. (Compl., ¶¶ 14, 16–20.) It also alleges that Knutson pays for incoming calls. (*Id.*, ¶¶ 21, 39.) The allegations can fairly be read to claim that Knutson prepays minutes on his phone, and phone calls such as the one at issue here count against that time. The complaint alleges that the call amounted to a nuisance and an invasion of his privacy. (*Id.*, ¶ 28.) It also alleges Knutson did not provide his prior express

///

---

[1] The complaint elsewhere mentions a "pre-recorded" voice (Compl., ¶ 28), but this appears to be a scrivener's error. The earlier allegations describe in detail a conversation with a live operator.

4

consent for such a call, and had no existing business relationship with Blue Light. (*Id.*, ¶¶ 22–23.)

The Ninth Circuit's recent reversal of *Romero* forecloses many of Blue Light's arguments. Though the allegations are not as clear as they might be, it appears Knutson is alleging the call depleted his prepaid minutes, which is generally considered an economic injury. *See Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 947 (C.D. Cal. 2015) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14115 (2003)). This by itself would constitute an injury in fact.

In the absence of an economic injury, the Court would be required to raise and consider Blue Light's contentions that Knutson invites and welcomes calls such as the one Blue Light placed. *Van Patten* makes clear that a consumer who in fact suffers irritation, invasion of privacy, or an unwanted intrusion has suffered the kind of concrete injury that the TCPA is intended to protect against, and that a plaintiff need not allege any more than this to plead standing. 847 F.3d at 1043 (quoting *Spokeo*, 136 S. Ct. at 1549) ("A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'") While most calls that violate the TCPA will no doubt cause irritation, invasion of privacy, or unwanted intrusion, it does not necessarily follow that every call will do so.

If, as Blue Light posits, Knutson actively invites calls from the public about his real estate business by posting his phone number online and soliciting business inquiries, it is unlikely he can plausibly claim that one such call requesting information about a real estate matter (*see* Compl., ¶ 17) led to any of the intangible injuries the TCPA was intended to protect against. But because he can establish standing through an economic injury, the Court need not reach this issue

/ / /

/ / /

at this time. That being said, if Knutson moves for class certification,[2] or if it turns out that Knutson did not suffer an economic injury, the Court might be required to revisit this issue.

**Failure to State a Claim**

This part of the motion focuses on the nature of the call, and whether Knutson consented. The motion refers to Exhibit I which, as noted, the Court cannot consider when ruling on a Rule 12(b)(6) motion. But the complaint, and Knutson's characterization of it, provide information about the call and its content.

According to the complaint, the caller, who identified herself as "Chrystal," told Knutson she knew he had recently sold a home, and offered him a $200 gift card for the contact information of the home buyers. (Compl., ¶ 17.) Knutson asked Chrystal a call-back number, which she provided. (*Id.*, ¶ 18.) Knutson's opposition explains that the caller was asking for the personal contact information of Knutson's clients in order to market a security system to them. (Docket no. 13 at 23:1–5.)

Knutson relies on the TCPA's requirement that a caller obtain prior written consent before placing text messages or phone calls that include advertisements or constitute telemarketing. 47 C.F.R. § 64.1200(a)(2). The TCPA's regulations further define what telemarketing means, and who qualifies as a telemarketer. Knutson's theory is that Blue Light was acting as a telemarketer for purposes of the call it placed to him, and therefore that prior written consent was required.

/ / /

---

[2] It is not clear whether Knutson's interests and injuries align with those of class members. By way of example, the putative class members consist of people contacted for purposes of marketing home security systems. (Compl., ¶ 37.) Knutson was contacted about providing the names of his clients to Blue Light and was offered an incentive for doing so. (*Id.*, ¶ 17.) Knutson's injuries may also not align if some or all of them suffered intangible injuries but he did not suffer.

6

Blue Light may have been a telemarketer with respect to putative class members, if it tried to sell them home security systems by phone.  But Knutson does not allege that they tried to or were attempting to sell him a security system or anything else.  Instead, he asserts they were trying to <u>buy</u> information from him about people he had just sold a home to, so that they could sell a security system to those people.  His theory, apparently, is that because the call placed to him was part of a plan to market security systems, it amounted to a telemarketing call.

Knutson has misconstrued the provisions he relies on as being aimed at the strategies and behavior of telemarketers in a general sense. He cites the definition of "telemarketer" as if to suggest that any call a telemarketer places amounts to telemarketing.  The text makes clear, however, that it provides for liability if someone places a particular kind of call — "any telephone call that includes or introduces an advertisement or constitutes telemarketing. . . . ." § 64.1200(a)(2). It defines "advertisement" and "telemarketing" as well:

> The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services.

§ 64.1200(f)(1).

> The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

§ 64.1200(f)(12). Notably, neither of these includes offers to <u>buy</u> something (in this case information).

Blue Light may have been a telemarketer for purposes of other calls, but the call Knutson describes in the complaint did not include advertising or constitute telemarketing, as the regulation defines those terms.  The regulation's wording makes plain that it is aimed at calls that include or introduce advertisements, or constitute telemarketing, and not calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future.

Furthermore, the complaint does not allege that Blue Light was seeking Knutson's client's contact information so that he could call them. If Blue Light contacted them some other way, the TCPA would not be implicated in this transaction at all.

The putative class members might have TCPA claims, if Blue Light called them to advertise or market security systems to them. But because Blue Light did not engage in advertising or telemarketing when it called Knutson, he has not pled a claim. *See Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 942 (C.D. Cal. 2015) (noting that most federal courts read 47 U.S.C. § 227(b)(1) to limit standing to a "called party").

The issue of whether Blue Light's call was auto-dialed is not amenable to resolution on a motion to dismiss.

Although the Court did not rely on Exhibit I when making its rulings, Knutson should consider this exhibit when and if he decides to amend. Assuming that Knutson in fact did invite the public to call him about real estate matters, he should consider whether he can allege an absence of the requisite consent. The Court mentions this, not in order to forecast its likely holding, but to encourage the parties to consider this issue earlier rather than later.

**Motion to Stay**

In the event the Court denied the motion to dismiss, Blue Light asked the Court to stay the action pending a decision by the D.C. Circuit that might clarify what constitutes an auto-dialed call. Because the complaint is being dismissed, no stay is needed. In addition, a review of the docket suggests that the D.C. Circuit could rule at any time.

The issue of whether Blue Light's call to Knutson was auto-dialed might surface again later — for example, if Knutson amends and relies on a provision that applies to calls either auto-dialed or using an artificial or recorded voice, such as § 64.1200(a)(2). That could be an issue here, because the call described in the

8

17cv134-LAB (JMA)

complaint did not appear to use an artificial or recorded voice, which would mean Knutson would have to proceed on the theory that the call was auto-dialed.

**Conclusion and Order**

Although Knutson has no claim under the provisions he cites, the Court cannot say with certainty that he has no claim under some other provision, or that he could not amend successfully if given the opportunity. The Motion to Dismiss is therefore **GRANTED IN PART**. The complaint is **DISMISSED WITH LEAVE TO AMEND**. If Knutson believes he can successfully amend, he should seek leave by *ex parte* application (without obtaining a hearing date) for leave to amend that complies with Civil Local Rule 15.1. His application must be filed within **28 calendar days of the date this order is issued**. If Knutson files such an application, Blue Light may file an opposition within **14 calendar days of the date that application is filed**. No reply should be filed without leave. The Court will set a hearing if appropriate; otherwise, the matter will be deemed submitted on the papers.

The motion to stay is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: March 5, 2018

Hon. Larry Alan Burns
United States District Judge